## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DREYMOOR FERTILIZERS OVERSEAS PTE. LTD., a Singapore entity, | |
| *Plaintiff,* | |
| vs. | Case No. 20-CV-1115-EFM |
| ANNA MIKHAILOVA n/k/a a/k/a ANNA ADAMS, | |
| *Defendants.* | |

## MEMORANDUM AND ORDER

Plaintiff Dreymoor Fertilizers Overseas Pte. Ltd ("Dreymoor") asserts six claims against Defendant Anna Mikhailova.  Mikhailova is the sole member of AVAgro LLC ("LLC"), which is the sole owner of UAB AVAgro ("UAB") (collectively "AVAgro").  Dreymoor's claims arise from a transaction, involving approximately 27,000 metric tons of liquid fertilizer, that resulted in an arbitration between Dreymoor and Mikhailova's companies.

Dreymoor has now filed a Motion for Summary Judgment (Doc. 98) and seeks summary judgment on four of its claims.  In addition, Dreymoor seeks to pierce the corporate veil of LLC and UAB and hold Mikhailova personally responsible for the debt as the alter ego of these two companies.  For years the parties have agreed to little, and this proposition remains true in the

parties' summary judgment briefing. For the reasons stated in more detail below, the Court denies Dreymoor's motion.

## I.      Factual and Procedural Background[1]

On October 22, 2018, Dreymoor and UAB entered into a sales contract. On January 31, 2019, UAB filed for arbitration in New York. An arbitration award was issued on February 15, 2020, awarding Dreymoor €6,211,091.06 and $339,761.42 plus, starting 30 days thereafter, daily interest of .02% on unpaid amounts. Petitions to enforce the award were filed in Kansas and Lithuania,[2] and in both instances, the award was confirmed.

On April 28, 2020, Dreymoor filed suit against Defendant Anna Mikhailova,[3] asserting seven claims and a request for punitive damages. Dreymoor alleged that Mikhailova was the sole owner and managing member of LLC and UAB. Dreymoor alleged several tort claims, a breach of contract guaranty, promissory estoppel, and a claim for piercing the corporate veil. Mikhailova filed a motion to dismiss, which the Court granted in part and denied in part.[4]

Dreymoor filed an Amended Complaint asserting six claims: unjust enrichment, intentional misrepresentation and fraud, negligent misrepresentation and fraud, fraudulent conveyance, breach of contract guaranty, and promissory estoppel. Dreymoor also sought to pierce the corporate veil

---

[1] The facts set forth are those that are uncontroverted, and they are construed in favor of the non-moving party, Defendant Mikhailova. There are very few facts to set forth. Dreymoor asserted 21 numbered facts in its motion, but they were disjointed and sometimes without context or evidentiary support. Mikhailova disputed many of the facts.

Dreymoor also set forth an additional nine-page "factual background." Dreymoor did not separately number its facts in these pages. And Dreymoor failed to cite to the record numerous times. The Court did not include these facts as they were not appropriately set forth as required by D. Kan. Rule 56.1(a) which provides that "[t]he facts must be numbered and must refer with particularity to those portions of the record upon which movant relies."

[2] Dreymoor's case, No. 20-105, in the District of Kansas was initiated on March 3, 2020.

[3] In this case, Dreymoor does not bring suit against LLC or UAB so they are not parties.

[4] Doc. 18-1.

and hold Mikhailova personally liable for the torts of her entities (LLC and UAB). Finally, Dreymoor requested punitive damages.

Dreymoor now seeks summary judgment on four of its claims: fraudulent conveyance, unjust enrichment, breach of contract guaranty, and promissory estoppel. Dreymoor also requests that the Court pierce the corporate veil of LLC and UAB. Mikhailova opposes the motion.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[6]  The movant bears the initial burden of proof and must show the lack of evidence on the nonmovant's claim.[7]  If the movant carries its initial burden, the nonmovant may not simply rest on its pleadings but must instead set forth specific facts showing a genuine issue for trial as to those matters for which it carries the burden of proof.[8]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits; conclusory allegations alone cannot survive a motion for summary judgment.[9]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[10]

---

[5] Fed. R. Civ. P. 56(a).

[6] *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citations omitted).

[7] *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citations omitted).

[8] *Id.* (citing *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

### III.    Analysis

Dreymoor asserts that it is entitled to summary judgment on its claims against Mikhailova for fraudulent transfer, unjust enrichment, breach of contract guarantee, and promissory estoppel. Dreymoor also seeks to pierce the corporate veil and hold Mikhailova personally liable for the debt of LLC and UAB.  The Court will briefly address each contention.

### A.    Fraudulent Transfer

Dreymoor contends that it is entitled to summary judgment on this claim because there are no questions of fact that Mikhailova received a series of fraudulent transfers from AVAgro.  It asserts that UAB or LLC transferred $844,000 to Mikhailova, with the largest transfer in the amount of $720,000 in December 2018.  Mikhailova, however, disputes Dreymoor's facts, and Dreymoor fails to provide factual support for some of its assertions, specifically some of the alleged transfers.[11]

Pursuant to K.S.A. § 33-204(a):

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

---

[11] Dreymoor relies on a document created by its CFO, Suraj Aggarwal, in which he states that he reviewed the bank records of UAB and LLC and determined that there were 10 transfers from LLC to Mikhailova. Mikhailova specifically discusses the $720,000 transaction and contends that it was a mistake and that $600,000 was transferred back once she was aware of the mistake. Dreymoor argues that although Mikhailova testified that a bank transfer was a mistake, "it was not a mistake." Dreymoor then simply cites to a bank record, apparently to demonstrate that the transfer was not a mistake.  Dreymoor's citation to a bank record does not establish that the transfer "was not a mistake" and does nothing to controvert Mikhailova's affidavit that she was sleep deprived and due to inattention, she entered an extra zero.  Furthermore, "[c]redibility determinations [and] the weighing of the evidence . . . are jury functions, not those of a judge." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1216 (10th Cir. 2003) (citations omitted).

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that such debtor would incur, debts beyond such debtor's ability to pay as they became due.

Dreymoor does not address subsection (1) of the statute and only focuses on subsection (2). However, Dreymoor only conclusorily states that no equivalent value was exchanged for the transfer. In addition, Dreymoor simply states that AVAgro's remaining assets were unreasonably small or AVAgro knew their debt to Dreymoor was beyond their ability to pay. The Court finds that Dreymoor fails to set forth uncontroverted facts with regard to the alleged transfers, fails to adequately address the relevant law, and fails to adequately explain how the facts relate to the law. Accordingly, Dreymoor is not entitled to summary judgment on this claim.

## A. Unjust Enrichment

"To establish an unjust enrichment claim, a plaintiff must establish (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated and has knowledge of the benefit; and (3) the defendant accepted and retained the benefit under circumstances that make the retention unjust."[12]

With this claim, Dreymoor contends that Mikhailova paid $100,000 to the CEO of Dreymoor, Dmitry Shimanovich, in April 2017. Dreymoor asserts that this payment was a "bribe,"[13] and Mikhailova benefitted from the profits of the 2017 transaction. Notwithstanding

---

[12] *Univ. of Kan. Hosp. Auth. v. Bd. of Comm'rs of Cnty. of Wabaunsee*, 299 Kan. 942, 327 P.3d 430, 441 (2014) (citation omitted).

[13] One of Dreymoor's "undisputed material facts" is that Mikhailova's payment to the CEO of Dreymoor, Dmitry Shimanovich, was a "bribe." Mikhailova does not categorize the payment in this manner. First, she avers that LLC paid the money (not Mikhailova), and second, she avers that the payment was a "consulting fee." In addition, Shimanovich's own affidavit states that Mikhailova's offer was for compensation in the form of a "commission," and

the issue of Dreymoor's categorization of this payment as a "bribe," Dreymoor also does not identify or adequately explain the 2017 transaction that resulted in profits for Mikhailova. Thus, Plaintiff does not demonstrate with uncontroverted facts that Dreymoor conferred a benefit *on* Mikhailova. Instead, Dreymoor confusingly asserts that Mikhailova was unjustly enriched by the payment of her "bribe" *to* Dreymoor's CEO.[14] Suffice to say, Dreymoor fails to demonstrate that there are uncontroverted facts or how these facts relate to the elements of an unjust enrichment claim such that it would be entitled to summary judgment on this claim. Thus, the Court denies Dreymoor's request for summary judgment on this claim.

**C.      Breach of Contract Guarantee**

Dreymoor argues that Mikhailova repeatedly offered in writing to personally guarantee a debt owed by UAB to Dreymoor, confirming an oral promise she made at a meeting in Nashville. Dreymoor relies on several emails sent by Mikhailova, including ones sent on December 19, December 20, and December 21, 2018. Broadly, Mikhailova states in these emails that she promised Dreymoor would not lose money in helping AVAgro pay for product and that the responsibility ultimately rests with AVAgro and her personal guarantee.

Mikhailova attempts to invoke the statute of frauds as a defense to Dreymoor's breach of contract guarantee claim. K.S.A. § 33-106 provides:

> No action shall be brought whereby to charge a party upon any special promise to answer for the debt, default or miscarriage of another person; . . . unless the agreement upon which such action shall be brought, or some memorandum or note

---

his deposition states that it was "consulting assistance." Thus, the Court cannot and will not categorize this payment as a "bribe" or an uncontroverted fact.

[14] Dreymoor is intent on demonstrating that Mikhailova's payment was a bribe and cites to the Kansas criminal code for commercial bribery. The Court is not considering a bribery claim but is instead considering an unjust enrichment claim and whether Mikhailova was unjustly enriched.

thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing.

Mikhailova states that the personal guarantee alleged by Dreymoor does not exist in a form that is enforceable under the statute of frauds. Yet, Dreymoor points out that the statute of frauds is an affirmative defense that Mikhailova did not include in her initial Answer, her Answer to the Amended Complaint, or the Pretrial Order. Dreymoor's contention is correct.[15] Although Mikhailova asserted the statute of frauds as a defense in her original motion to dismiss, she failed to include the defense in any of her pleadings afterwards. And failure to preserve an affirmative defense in the pretrial order "is considered a waiver of the defense."[16] Thus, Mikhailova cannot assert the statute of frauds as a defense.

As to Dreymoor's claim against Mikhailova, however, it fails to set forth or adequately address the applicable law. In Dreymoor's initial memorandum, Dreymoor references Kansas' Uniform Commercial Code and specifically cites K.S.A. § 84-2-204 for the proposition that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."[17] Dreymoor, however, seeks to enforce an alleged personal guarantee made by Mikhailova to cover AVAgro's debts.[18] Thus, the UCC, and its requirements for determining whether a contract was made for the sale of goods, is not relevant.

---

[15] *See* Fed. R. Civ. P. 8(c)(1) (listing statute of frauds as an affirmative defense); *see also Wolfson v. Nutt*, 2010 WL 4568152, at *3 (D. Kan. 2010) (citing Fed. R. Civ. P. 8(c)).

[16] *Kay-Cee Enters., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 846 (D. Kan. 1999).

[17] K.S.A. § 84-2-204(1).

[18] The transaction between Mikhailova's companies and Dreymoor may have related to a sale of goods. But Dreymoor's claim against Mikhailova is for breach of a personal guaranty.

In Dreymoor's reply, Dreymoor cites to other contractual principles.  It contends that the construction of a contract is a matter of law for the Court to decide, and it asserts that Mikhailova's emails demonstrate the outward expression of the parties' intent.  Yet, Dreymoor only sets forth Mikhailova's side (her offer).  And to determine whether Dreymoor "accepted" Mikhailova's "offer," Dreymoor must set forth uncontroverted facts demonstrating its acceptance.  It fails to do so.  Although Dreymoor asserts that it accepted Mikhailova's offer by extending the time for Mikhailova to pay her debt (or it delayed collective action), it fails to cite to the record to support this fact.  Furthermore, Mikhailova disputes this fact, by affidavit, stating that Dreymoor did not allow AVAgro's companies any additional time to sell the cargo or make the payment.  Thus, there are not uncontroverted facts for which the Court to find that a contract was made.

Furthermore, Dreymoor's claim is one for *breach* of contract guaranty.  Dreymoor does not provide the elements for a breach of contract claim nor discuss them.  And while Dreymoor's allegations in the Amended Complaint and Pretrial Order state that Mikhailova failed to pay Dreymoor, Dreymoor makes no attempt to set forth law or uncontroverted facts in this motion demonstrating such a breach.  Instead, Dreymoor relies on disjointed facts, some of which are controverted.[19]  At this point, Dreymoor cannot rest on its allegations and must come forward with evidence (uncontroverted for summary judgment) that supports the elements of its claim.  Dreymoor fails to do so.  Because the elements of the claim are not set forth and numerous facts are either unsupported or disputed, Dreymoor is not entitled to summary judgment on this claim.

---

[19] The majority of Dreymoor's motion is divorced from its actual claims in this case. Dreymoor includes more facts in its Pretrial Order regarding Mikhailova's alleged breach than it does in its Motion for Summary Judgment.

## D.   Promissory Estoppel

"Promissory estoppel presents an alternative claim to one for breach of contract."[20]  "A party may resort to promissory estoppel where proof of an essential element of a contract fails."[21] The elements of a promissory estoppel claim include:

> [1] defendant made a promise, [2] the promise was made under circumstances where the promisor intended and reasonably expected the promise would be relied upon by the promisee, [3] the promisee acted reasonably in reliance on the promise, and [4] a refusal to enforce the promise would result in an injustice.[22]

As to this claim, Dreymoor does not set forth the law nor address the elements.  Instead, Dreymoor simply asserts that the undisputed facts are sufficient for summary judgment on both the breach of contract and promissory estoppel claims.  Yet, Dreymoor fails to set forth relevant or admissible evidence, and Dreymoor fails to discuss any of the essential elements of the claim.[23] Because Dreymoor wholly fails to address the law and fails to set forth uncontroverted facts, the Court denies summary judgment.

## E.   Piercing the Corporate Veil[24]

Finally, Dreymoor requests that the Court pierce the corporate veil and hold Mikhailova personally responsible for the debts of LLC and UAB.  Mikhailova asserts that she was unable to

---

[20] *Team Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, 2022 WL 16961237, at *13 (D. Kan. 2022) (citing *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1167 (D. Kan. 1990)).

[21] *Id.*

[22] *EDO Corp. v. Beech Aircraft Corp.*, 911 F.2d 1447, 1454 (10th Cir. 1990) (citations omitted).

[23] Dreymoor asserts in its factual statement that it relied on Mikhailova's promises but fails to cite to the record for this proposition.

[24] The Court previously held in its October 14, 2021 Order that "an action to pierce the corporate veil is not a separate and independent cause of action, but rather is merely a procedure to enforce an underlying judgment." *Powers v. Emcon Assocs., Inc.*, 2017 WL 4102752, at *1 (D. Colo. 2017) (quotation marks and citations omitted).

find Kansas law that allowed a court to pierce the corporate veil of a limited liability company.  In addition, she contends that K.S.A. § 17-7668(a) holds otherwise because this statute provides:

> Except as otherwise provided by this act, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability solely by reason of being a member or acting as manager of the limited liability company.

Although Mikhailova correctly cites to the statute, there is ample caselaw from Kansas allowing the piercing of the corporate veil of an LLC.  In *Bates v. Flemming*,[25] the District of Kansas pierced the corporate veil of an LLC finding that the uncontroverted facts in that case justified disregarding the corporate entity.[26]  Thus, the court imposed personal liability on the sole member of the LLC.[27]  Indeed, even in one of the cases Mikhailova cites, *Emprise Bank v. Rumisek*,[28] the Kansas Court of Appeals determined that there were factual questions regarding whether one of the members of a company, which was an LLC, acted as the alter ego of the company.[29]  The court reversed and remanded to the district court for trial on whether the individual was the alter ego of the LCC.[30]  Accordingly, the Court concludes that the corporate veil of an LCC may be pierced if there are sufficient facts to do so.

---

[25] 2022 WL 103240 (D. Kan. 2022).

[26] *Id*. at *4-5.

[27] *Id.* at *5.  *See also Blalock v. SRKBS Hotel, LLC*, 2023 WL 2734226, at *3-4 (D. Kan. 2023) (declining to dismiss the six LLC member defendants because the plaintiff adequately alleged sufficient facts that the LLC's corporate veil should be pierced); *Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1239 (D. Kan. 2008) (recognizing that a basis for personal liability for a member of an LLC is if the Court pierces the corporate veil).

[28] 42 Kan. App. 2d 498, 215 P.3d 621 (2009).

[29] *Id.* at 625, 635-36.

[30] *Id.* at 636.

To disregard the corporate entity and hold an owner personally responsible, there are eight factors to consider.  These include:

> (1) Undercapitalization of a one-man corporation, (2) the failure to observe corporate formalities, (3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) the nonfunctioning of other officers or directors, (6) the absence of corporate records, (7) the use of the corporation as a façade for operations of the dominant stockholder or stockholders, and (8) the use of the corporate entity to promote injustice or fraud.[31]

Here, Dreymoor relies on factors four, seven, and eight.  Dreymoor states that Mikhailova treated UAB and LLC as her own personal bank.  In addition, it contends that Mikhailova's "fraudulent transfers," payments to herself, and transference of money between her entities and herself was intentional siphoning of corporate funds, the use of the corporation as a façade, and the use of the corporate entity to promote injustice and fraud.  Yet, all these facts are disputed by Mikhailova.

Generally, it is a question of fact whether a company is an alter ego.[32]  And each case usually rests upon its own special facts.[33]  If there are disputed facts, piercing the corporate veil on summary judgment is not appropriate.[34]  In this case, it is not appropriate.  Thus, the Court denies Dreymoor's request to pierce the corporate veil.

---

[31] *Id.* at 635 (internal quotation marks and citation omitted).

[32] *Id.*

[33] *Id.* at 636 (citation omitted).

[34] *Id.*

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 98) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 22nd day of November, 2023.

*Eric F Melgren*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE